UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

LEWIS HERRINGTON ET AL

VERSUS

SID J. GAUTREAUX, III ET AL

CIVIL ACTION

NO. 13-650-JJB

**RULING ON DEFENDANTS' MOTION TO DISMISS**

This matter is before the Court on a Motion (doc. 19) to Dismiss Amended Complaint brought by the Defendants, Sid J. Gautreaux, III, Donald Fauntleroy, and Robert Buquoi (collectively referred to herein as the "Defendants"). Plaintiffs, Lewis Herrington, Ramona Herrington, and Pattianne Herrington (collectively referred to herein as the "Herringtons"), have filed an opposition (doc. 21). Oral argument is unnecessary. This Court has jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons stated herein, the Defendants' motion is **GRANTED**.

   I.   Background

The Herringtons bring this action pursuant to 42 U.S.C. § 1983 alleging that two deputies of the East Baton Rouge Sherriff's office, Donald Fauntleroy ("Fauntleroy") and Robert Buquoi ("Buquoi") (collectively referred to herein as the "Deputies"), entered upon their property without a warrant or exigent circumstances in violation of their Fourth Amendment rights. Defendants bring this motion to dismiss arguing that: (1) the Herringtons have failed to allege sufficient factual matter to state a claim against the Defendants in their official capacity; (2) the Deputies are entitled to qualified immunity in the event that the Herringtons have stated a claim against them in their individual capacities; and (3) the Herringtons have failed to allege enough

1

factual allegations to support their state law claims, or alternatively, the Defendants ask that the Court decline to exercise supplemental jurisdiction over the state law claims.

The following facts are from the Amended Complaint (doc. 4) and are accepted as true for the purpose of this motion. *See Bass v. Stryker Corp.*, 669 F.3d 501, 507 (5th Cir. 2012). On September 3, 2012, the Deputies entered upon the Herringtons' property looking for inoperable vehicles pursuant to a city ordinance which authorizes the removal of such vehicles. The Deputies did so without a warrant and outside the presence of exigent circumstances. As they approached the property, the Deputies were met by Pattianne Herrington. She wanted to know why the Deputies were coming onto her property. Instead of receiving an explanation, she was told to "back off" or risk being arrested. Once on the property, the Deputies found 12 immovable vehicles located in a secluded and remote part of the Herringtons' property not easily viewable from the public road. The Deputies placed notices on the 12 vehicles and advised Lewis Herrington that the vehicles needed to be removed at his own expense. The Herringtons had 9 out of the 12 vehicles removed at a cost of $225 per vehicle. While trying to gain access to the property, the Deputies damaged the Herringtons' perimeter fence, gate, and metal gate post.

On October 8, 2012, the Deputies returned to the Herringtons' property without a warrant and outside of the presence of exigent circumstances to determine if the inoperable vehicles had been removed. They advised Lewis Herrington that the three remaining vehicles needed to be removed or else the sheriff's office would remove them. During their conversation with Lewis Herrington, the Deputies raised their voices, alarming his wife Ramona Herrington who was recovering from a recent hospitalization. Her heart began to race as she became fearful for her husband's safety and concerned about her daughter Pattianne's mental health as she is bipolar, suffers from paranoid schizophrenia, and was still recovering from her first interaction with the

Deputies.  As a result of her elevated pulse, Ramona Herrington was rushed to the hospital where she received medication to reduce her heart rate.

Following these two interactions, the Herringtons filed suit against Sid J. Gautreaux, III in his official capacity as Sheriff of East Baton Rouge in state court.  Additionally, the Herringtons included the Deputies in their suit but it is unclear whether they are being sued in both their official and individual capacities.  After receiving service, the Defendants moved to remove (doc. 1) the suit to federal court where it now stands.  Soon thereafter, Defendants filed a motion to dismiss the complaint (doc. 2).[1]  The Herringtons subsequently filed an Amended Complaint (doc. 4) which the Defendants now move to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (doc. 19).

## II. Discussion

### A. The 12(b)(6) Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  When reviewing the complaint, a court must accept all well-pleaded factual allegations as true. *C.C. Port, Ltd. v. Davis-Penn Mortg. Co.*, 61 F.3d 288, 289 (5th Cir. 1995).  In order to survive a motion to dismiss, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A court need not determine at this preliminary stage whether the plaintiff's claims will ultimately succeed on the merits. *Id.* at 556.  Instead, a court must identify the factual allegations entitled to the presumption of truth and determine whether they state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

---

[1] The Defendants' first motion to dismiss has been mooted by the Herringtons' filing of the Amended Complaint (doc. 4).

3

### B. The Official Capacity Claim

The Herringtons have sued the Defendants in their official capacities. A suit against a government official in his official capacity is the equivalent of filing suit against the government agency of which the official is an agent. *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999). Therefore, to determine whether the plaintiff has stated such a claim, the Court must conduct a municipal liability analysis under *Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658 (1978). *See Nowell v. Acadian Ambulance Service*, 147 F.Supp.2d 495, 501 (W.D. La. 2001) (citing *Turner v. Houma Mun. Fire and Police Civil Service Bd.,* 229 F.3d 478, 483 fn. 10 (5th Cir. 2000)).

To assert a claim of municipal liability under Section 1983, a plaintiff must adduce sufficient factual matter to satisfy three elements: (1) the existence of an official policy or custom; (2) a policymaker with final policymaking authority; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Davis v. Tarrant County, Tex.*, 565 F.3d 214, 227 (5th Cir. 2009). Municipal liability cannot be established by a theory of *respondeat superior*. *Monell*, 436 U.S. at 691. Instead, the plaintiff must point to some official policy or custom that caused their constitutional harm. *Id.* The Fifth Circuit Court of Appeals has unanimously defined an official policy for Section 1983 purposes as:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc).

4

Though it is not clear from the Amended Complaint, it appears that the Herringtons are also asserting a claim on a failure to train or supervise theory against the Defendants. To support a claim based upon a failure to train or supervise, a plaintiff must show that: (1) the supervisor either failed to train or supervise a subordinate official; (2) there is a causal link between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise constitutes deliberate indifference. *Smith v. Brenoesttsy*, 158 F.3d 908, 911-12 (5th Cir. 1998). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his actions." *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 410 (1997). Generally, deliberate indifference requires that the plaintiff show: (1) a pattern of similar violations; (2) that the inadequacy of the training was obvious; and (3) that the inadequacy of the training was obviously likely to result in a constitutional violation. *Burge*, 187 F.3d at 371 (citing *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001)). While discussing the first prong of the deliberate indifference analysis, the Supreme Court explained that,

> A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train. Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability. Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.

*Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011) (citations and quotations omitted).

Defendants argue that the Herringtons have failed to state a claim because the Amended Complaint does not identify an official policy or custom or any specific facts tending to show that the Defendants were acting pursuant to such an official policy or custom. Instead, they

5

assert that the Herringtons rely upon isolated incidents to support the conclusion that an official policy or custom exists.  In response, the Herringtons rely upon the conclusory allegations in their complaint, specifically contending that there is an official policy pursuant to which the Deputies acted and there was a failure to train the Deputies.  Additionally, the Herringtons argue that the incidents involved in the present case, as well as an incident involving a neighbor, support their claim.[2]

      After reviewing the Amended Complaint, the Court finds that the Herringtons have failed to adduce sufficient factual matter to make their claim plausible on its face.  Instead, they have relied upon conclusory allegations not entitled to the presumption of truth and insufficient to state a claim for relief.  *See Iqbal*, 556 U.S. at 678-79.  To support their claim for relief, the Herringtons make the following conclusory allegations: "The actions of defendants Fauntleroy and Buquiol [sic] clearly demonstrate that the East Baton Rouge Sheriff's office as a policy of not (a) properly training their officers…[and]…(b) allowing deputies to enter upon private property without [justification]." (Doc. 4, at ¶ 14).  Rather than providing specific facts to support these conclusions, the Herringtons rely on two instances to prove that an official policy exists.  These instances alone are insufficient to support a claim for municipal liability.  *See Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) ("The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.").  Also fatal to the Herringtons' official capacity claim is the fact that the Amended Complaint fails to allege that the Defendants are official policy makers.

---

[2] The Court may only consider facts contained within the four corners of the amended complaint and any documents attached thereto.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  Therefore, the Court will not consider the alleged incident between the officers from the East Baton Rouge Sheriff's Office and the Herringtons' neighbor.

Similarly, the Herringtons have failed to state a claim on a failure to train or supervise theory. The Herringtons do not allege that there is a pattern of similar constitutional violations, instead again choosing to rely upon the incidents involved in the present matter. However, these two incidents alone fail to demonstrate a pattern of similar violations as they are insufficient to put policymakers on notice that their course of training was deficient as required by *Connick*. *See Prince v. Curry*, 423 Fed. Appx. 447, 451 (5th Cir. 2011) (finding that two incidents did not demonstrate a pattern of constitutional violations that tended to show deliberate indifference). Therefore, the Herringtons have failed to state a municipal liability claim upon which relief may be granted.

### C. The Individual Capacity Claim

Though the Amended Complaint does not clearly state whether the Deputies are being sued in their individual as well as official capacities, the Defendants have addressed the Deputies potential individual liability out of an abundance of caution. In doing so, the Defendants assert that the Deputies are entitled to qualified immunity because they acted reasonably in light of clearly established law and their actions were not in violation of the Herringtons' constitutional rights. The Herringtons counter by citing case law and concluding without analysis that the cited language defeats the qualified immunity defense.

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This protection extends to "all but the plainly incompetent or those who knowingly violate the law." *Pierce v. Smith*, 117 F.3d 866, 871 (5th Cir. 1997) (internal quotations omitted). When evaluating whether or not a public official is entitled to qualified immunity, a court must

7

determine: (1) whether the plaintiff has alleged the violation of a constitutional right; and (2) whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005). A court may use its discretion when deciding which prong of the qualified immunity analysis to first address. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Addressing the second prong of the qualified immunity analysis, the Fifth Circuit has stated, "The touchstone of this inquiry is whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law." *Glenn v. City of Tyler,* 242 F.3d 307, 312 (5th Cir. 2001) (quoting *Goodson v. Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000)). A defendant is considered to have acted reasonably unless at the time and under the circumstances, all other police officers would have known that the challenged conduct violated a constitutional right. *Pierce*, 117 F.3d at 871.

The Defendants argue that they are entitled to qualified immunity because they acted pursuant to a city ordinance. Title 12, Chapter 7 of the Code of Ordinance of the City of Baton Rouge and Parish of East Baton Rouge states in relevant part:

> **Sec. 12:500. Findings and declarations.**
>
> In addition to and in accordance with the determination made and the authority granted to remove abandoned, inoperative vehicles as public nuisances, the metropolitan council makes the following findings and declarations:
>
> The accumulation and storage of abandoned, inoperative, dismantled, or wrecked vehicles is found to create a condition tending to reduce the value of property; to promote blight and deterioration; to invite plundering; to create fire hazards; to constitute an attractive nuisance creating a hazard to the health and safety of minors; to create a harborage for rodents and insects; and to be injurious to the health, safety and general welfare. Therefore, the presence of abandoned or inoperative vehicles, except as expressly hereinafter permitted, is declared to

constitute a public nuisance which may be abated as such in accordance with the provisions of this part.

**Sec. 12:502. Exceptions.**

This part shall not apply to:

(a) A vehicle which is completely enclosed within a building in a manner that is not otherwise visible from the street or other public or private property;

**Sec. 12:503. Administration, enforcement, right of law enforcement officers to enter private property.**

Except as otherwise provided herein, the provisions of this part shall be administered and enforced by the chief of police, sheriff, or the director of public works. In the enforcement of this chapter, such persons charged with administration and enforcement may enter upon private or public property to examine the vehicle or parts thereof, or obtain information as to the identity of a vehicle and to remove or cause the removal of a vehicle or parts thereof declared to be a nuisance pursuant to this part.

BATON ROUGE AND EAST BATON ROUGE PARISH, LA., CODE OF ORDINANCES tit. 12, ch. 7 § 12:500 *et seq.*

"[W]hen a city council has duly enacted an ordinance, police officers on the street are ordinarily entitled to rely on the assumption that the council members have considered the views of legal counsel and concluded that the ordinance is a valid and constitutional exercise of authority." *Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994). Therefore, courts generally find that police action under these circumstances counsels in favor of finding qualified immunity. *Id.*; *see also Tackett v. City of Ponchatoula*, CIV. A. 94-1456, 1995 WL 164946 (E.D. La. Apr. 6, 1995) (finding that police officers who acted pursuant to municipal ordinance were entitled to qualified immunity because they did not violate clearly established law). That said however, officers may not blindly rely upon an ordinance to justify their actions. Instead, police officer must reasonably believe that the ordinance is constitutional in light of clearly established law. *Grossman*, 33 F.3d at 1209. Similarly, an officer who enforces an ordinance in

9

an egregiously unlawful manner cannot avail himself of the qualified immunity defense.  *Id.* at 1210.

After reviewing the Amended Complaint, the Court finds that the Deputies acted objectively reasonable in light of clearly established law.  The Deputies acted pursuant to a city ordinance promulgated by the metropolitan council of Baton Rouge and East Baton Rouge Parish.  The ordinance clearly finds that inoperable vehicles visibly stored are a public nuisance which must be removed according to the terms therein provided.  Furthermore, the ordinance clearly authorizes officers to go onto private property to enforce its terms unless the vehicle is housed within an enclosed building and hidden away from public view.  Here, the Amended Complaint alleges that the vehicles were "all located in a secluded, remote field deep in the petitioners' immovable…unseen from the public road and located in an appropriate storage place…" (Doc. 4, ¶ 13).  It also concedes that there were inoperable vehicles on the property.  (Doc. 4, ¶ 6).  The Amended Complaint does not, however, allege that the vehicles were "completely enclosed within a building" as required by the ordinance's exception.  § 12:502.  The allegations found in the Amended Complaint show that the Herringtons were in violation of the ordinance and not eligible for the exception.  Therefore, the Deputies acted objectively reasonable in light of clearly established law when they acted pursuant to, and in reliance on, the ordinance.  Accordingly, the Deputies are entitled to qualified immunity from suit in their individual capacities.[3]

### D.  State Law Claims

The Court has determined that the Herringtons' claims arising under federal law are to be dismissed.  All that remains are the Herringtons' state law tort claims for intentional destruction

---

[3] The Herringtons do not allege that the ordinance is unconstitutional.  However, even if they had challenged the constitutionality of the ordinance, the city, and not the Deputies would have been the proper party to sue.  *Grossman*, 33 F.3d at 1209 fn. 18 (citing *Monell*, 436 U.S. at 694).

of private property and assault against all Defendants. Therefore, the Court must determine whether to continue to exercise supplemental jurisdiction over the Herringtons' remaining claims. *See* 28 U.S.C. § 1367. A district court may decline to exercise supplemental jurisdiction if, among other things, "the district court has dismissed all claims over which it has original jurisdiction."§ 1367(c). While a court has wide discretion in determining whether to exercise supplemental jurisdiction, the "general rule" is to decline to exercise such jurisdiction when all federal claims have been eliminated prior to trial. *Smith v. Amedisys Inc.*, 298 F.3d 434, 446-47 (5th Cir. 2002) (quoting *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999)).

Here, the Court has dismissed all of the claims over which it had original jurisdiction. Only the state law claims remain and the Court lacks an independent basis for asserting jurisdiction over them. Since the claims involve issues of state law, the principle of comity weigh in favor of allowing a state court to adjudicate their merits. Therefore, the Court finds that the general rule counseling against the exercise of supplemental jurisdiction over state law claims when no federal claims remain applies in this case. Accordingly, the state law claims are dismissed without prejudice.

**III.   Conclusion**

For the reasons stated herein, the Defendants' motion (doc. 19) to dismiss is **GRANTED** and all of the Herringtons' federal claims are **DISMISSED**. The Herringtons' state law claims are **DISMISSED WITHOUT PREJUDICE**. Defendants' motion (doc. 2) to dismiss the original complaint is **DISMISSED AS MOOT**.

Signed in Baton Rouge, Louisiana, on February 28, 2014.

_____
**JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**